NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

FARM CREDIT EAST, ACA,

    Plaintiff,

       v.

F/V MARKET PRICE (O.N. 1275363), *in rem*, et al.,

    Defendants.

Civil Action No. 24-8309 (RK) (JBD)

**MEMORANDUM ORDER**

---

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Farm Credit East, ACA's ("Plaintiff") unopposed Motion for Confirmation of Sale of Defendants F/V *Carol Ann* (O.N. 615907), F/V *Major Expense* (O.N. 627357), F/V *Market Price* (O.N. 1275363), and each Vessel's engines, boilers, tackle, electronics, appurtenances, and federal fishing permits and quota (respectively, Nos. 330396, 330566, 251849) (collectively, "Defendant Vessels," "Defendant Vessels and Permits," or "Defendants"), ("Motion," ECF No. 37-2), and upon non-party Mr. Joseph Corey Karch's ("Mr. Karch") narrow objection that he be released from his bid as to Defendant F/V *Carol Ann*, (ECF No. 36; *see* ECF No. 38). For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion and **SUSTAINS** Mr. Karch's objection.

## I.    BACKGROUND

On June 2, 2026, the Court granted in large part Plaintiff's Motions for Default Judgment and for Judicial Sale of the Defendant Vessels and entered judgment in favor of Plaintiff against

Defendants in the amount of $2,588,032.20.[1] (ECF Nos. 32.) On June 8, 2026, the Court issued an Order of Sale of Defendant Vessels and Authorization for Credit Bid, (ECF No. 34), pursuant to which Plaintiff published notice of the judicial sale in the *Asbury Park Press* on June 11 and June 18, 2026, and in the *Cape May County Herald* on June 17 and June 24, 2026, ("Braden Aff.," ECF No. 37-1 ¶¶ 4–5 (citing Exhibit A to Braden Aff.)). Plaintiff also notified the owners of Defendant Vessels of the sale via certified mail. (*Id.* ¶ 6 (citing Exhibit B to Braden Aff.).)

On June 29, 2026, the United States Marshal held a public auction as to the three Defendant Vessels and their respective federal fishing permits. (*Id.* ¶ 7.) Mr. Karch was declared the winning bidder of Defendant F/V *Carol Ann* for the sum of Twenty-Six Thousand Dollars ($26,000.00) but has since timely moved to withdraw his bid, as explained below. (ECF Nos. 36, 38; *see* Braden Aff. ¶¶ 8–9.) Farm Credit was the next highest bidder, utilizing its credit pursuant to the Order of Sale to bid at Twenty-Five Thousand Dollars ($25,000.00) for Defendant F/V *Carol Ann.* (Braden Aff. ¶ 8; Motion at 3; *see* ECF No. 34 at 4.) Farm Credit was also declared the winning bidder of Defendant F/V *Major Expense* for the sum of Five Thousand Dollars ($5,000.00) and Defendant F/V *Market Price* for the sum of Four Hundred Thirty-Three Thousand Dollars ($433,000.00). (Braden Aff. ¶ 10.)

Two days after the public auction, on July 1, 2026, Plaintiff's Counsel apparently received an email from the National Oceanographic and Atmospheric Administration ("NOAA"), a government agency, "claim[ing] that the Defendant Vessels and Permits were 'overfished' by the prior owner" in violation of 16 U.S.C. § 1857 and that "a subsequent purchaser of the federal

---

[1] Specifically, the Court granted in large part Plaintiff's Amended Motion for Default Judgment, denying only its unsupported request for publication costs, and granted in large part Plaintiff's Motion for Judicial Sale, except that the Court directed Plaintiff to publish notice of the judicial sale in an additional publication and denied as moot Plaintiff's request for "immediate sale" of Defendant Vessels. (ECF No. 32 at 6 n.8.)

2

permits would therefore be required to purchase quota from a third party, commensurate with the amount the prior owner overfished each permit, before being able to use the permits." (Motion at 5 n.1 (citing Exhibit C to Braden Aff.); *see* Braden Aff. ¶ 11.)

Based on this new information, Mr. Karch, the winning bidder for Defendant F/V *Carol Ann*, timely moved to withdraw his bid. (ECF No. 36; *see* ECF No. 38 (advising that Mr. Karch does not seek a hearing on the matter and does not object to this Court's confirmation of the sale of Defendant Vessels as set forth in Plaintiff's Motion).) Plaintiff does not oppose Mr. Karch's withdrawal, nor has any person or party objected. (*See* ECF No. 36 at 1.) Plaintiff, for its part, moves for the Court's confirmation of the sale of Defendant Vessels and Permits, with Plaintiff confirmed as the purchaser of each and with each "sold free and clear of all liens and encumbrances, including free of any alleged claims by NOAA requiring subsequent purchasers to pay for any 'overage' that may exist on the permits." (Motion at 5.)

## II.    DISCUSSION

### A.    Mr. Karch's Objection

Under Local Admiralty and Maritime Rule ("LAMR") (e)(12)(f), "[t]he Marshal shall transfer title to the purchaser upon the order of the Court." "Whether a marshal's sale shall be confirmed is largely a matter of sound judicial discretion." *HSH Nordbank v. M/V AHMETBEY*, No. 03-3520, 2003 WL 22795050, at *1 (E.D. Pa. Nov. 18, 2003) (quoting *Christian v. Sewer*, 962 F.Supp. 673, 675 (D.V.I. 1997)). In general, "[t]he policy of inspiring confidence in sales under the supervision of the court favors confirmation of a sale made to the highest bidder at a fairly conducted public auction." *Salazar v. Atl. Sun*, 881 F.2d 73, 81 (3d Cir. 1989). However, "fraud, unfairness, surprise or mistake" may warrant the Court's exercise of discretion to relieve a bidder of his bid. *Morgan Guar. Tr. Co. of N.Y. v. M/V Hellenic Sun*, 581 F. Supp. 1266, 1267 (D. Md.

1984) (citing *Am. Trading & Prod. Corp. v. Connor*, 109 F.2d 871, 872 (4th Cir. 1940)). "A court of admiralty is a court of equity," and "a sale will be set aside where there has been fraud or misconduct in the purchaser[;] fraudulent negligence or misconduct in any other person connected with the sale[;] [or] surprise or misapprehension created by the conduct of the purchaser, or by some other person interested in the sale, or by the officer who conducts it." *The Sparkle*, 22 F. Cas. 874, 876 (E.D.N.Y. 1874) (No. 13,207).

These principles warrant the Court's non-confirmation of the sale of F/V *Carol Ann* to Mr. Karch and the release of Mr. Karch from his bid under the present circumstances. *See* LAMR (e)(12)(g)(1). According to Mr. Karch, the previous owner's alleged overharvest of quota, and the NOAA's position that a subsequent owner must "purchase replacement quota, at his own expense, as a condition of being able to fish under the permit," constitute "undisclosed condition[s] materially and adversely affect[ing] the value the *res* as advertised." (ECF No. 36 at 3; *see id.* ("[A] substantial component of the value of a federally permitted fishing vessel resides in her permits and quota, not her steel, and a permit that cannot be fished without the purchase of replacement quota to cover a prior owner's overage is not the permit that was offered to bidders.").) The evidence of record supports Mr. Karch's assertion that, prior to bidding on the Defendant Vessel and Permit, he "had no means, through the diligence customary and reasonable for a bidder at a Marshal's sale, to discover" these conditions, and that no party faces prejudice from the withdrawal of his bid, (*id.* at 4–5), especially given that Plaintiff seeks confirmation of its next-highest bid, which was only $1,000 less than Mr. Karch's, (Braden Aff. ¶ 8).

The Court thus agrees with Mr. Karch that, "[w]hether . . . characterized as a material misdescription of the property, a mutual mistake as to the character of the *res*, or a failure of the consideration underlying the bid, the result is the same: equity should not hold Mr. Karch to [the]

4

bargain." (ECF No. 36 at 6.) Accordingly, the Court sustains his objection, declines to confirm the sale of Defendant F/V *Carol Ann* to Mr. Karch, releases Mr. Karch from his bid and any further obligation under the terms of sale, and directs the United States Marshal for the District of New Jersey to return Mr. Karch's $10,000 deposit. *See* LAMR (e)(12)(g)(1).

### B.   Plaintiff's Motion for Confirmation of the Sale

Having sustained Mr. Karch's objection and released him from his bid for Defendant F/V *Carol Ann*, the Court next confirms the sale of the Defendant Vessels and Permits to Plaintiff.

First, Plaintiff has satisfied the relevant notice requirements with respect to the public auction of Defendant Vessels and Permits. The Affidavit of Plaintiff's Counsel and accompanying Affidavits of Publication regarding notice of the public sale in the *Asbury Park Press Herald* and *Cape May County Herald* reflect that Plaintiff satisfied LAMR (e)(12)(a) and the terms of the Court's Order of Sale and adequately publicized the auction of Defendant Vessels to a wide audience. (*See* Braden Aff. ¶¶ 4–6; Exhibit A to Braden Aff.) Indeed, Plaintiff advises that the public auction was conducted "before 18 members of the public, several of whom actively participated in the bidding on the Vessels." (Motion at 3.)

Furthermore, no person or entity objects to the confirmation of the sale as set forth in Plaintiff's Motion, that is, with Plaintiff confirmed as the purchaser of each Defendant Vessel and Permit, free and clear of all claims, liens, and encumbrances. *See* LAMR (e)(12)(e). The Court has no reason to believe the Defendant Vessels' auction prices were "grossly disproportionate" to their values or that any other basis exists to not confirm the sale. *HSH Nordbank*, 2003 WL 22795050, at *4; *see Morgan Guar.*, 581 F. Supp. at 1267–68 ("[A] judicial sale regularly made in the manner prescribed by law, upon due notice, and without fraud, unfairness, surprise or mistake will not generally be set aside. Confirmation of the sale will not be refused because of mere inadequacy of

5

price, however great, unless the inadequacy is so gross as to 'shock the conscience and raise the presumption of fraud, unfairness or mistake.'" (citations omitted)).

Plaintiff advises that the NOAA recently raised, via email to Plaintiff's Counsel, the issue of the prior owner's overfishing, detailed above. (Motion at 5 n.1 (citing Exhibit C to Braden Aff.).) The NOAA has not properly presented any such issue to the Court in the form of a verified statement of right or interest in the Defendant Vessels or an objection to the Marshal's sale as required under LAMR (c)(4) and (e)(12) and Rule C(6)(a) of the Supplemental Rules for Admiralty and Maritime Claims. Nor has the NOAA appeared in this action. Other than Plaintiff's representations and the July 1 email Plaintiff attaches to its Motion, no submission from the NOAA is now before this Court.

As best the Court can discern in the absence of any such objection, appearance, or submission from the NOAA, it appears the NOAA purports to assert civil penalties against Defendants under 16 U.S.C. § 1858(d). *See* 16 U.S.C. § 1858(d) ("A fishing vessel (including its fishing gear, furniture, appurtenances, stores, and cargo) used in the commission of an act prohibited by section 1857 of this title shall be liable in rem for any civil penalty assessed for such violation under this section and may be proceeded against in any district court of the United States having jurisdiction thereof."). Such penalties are "maritime lien[s] on [the] vessel[s]," *id.*, which are terminated with the sale of the Vessels pursuant to 46 U.S.C. § 31326(a) and statutorily converted to claims against the *res* under 46 U.S.C. § 31326(b),[2] *see Goldfish Shipping, S.A. v. HSH Nordbank AG*, No. 07-3518, 2008 WL 4809410, at *4–6 (E.D. Pa. Nov. 3, 2008), *aff'd*, 377 F. App'x 150 (3d Cir. 2010); *see also Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve*

---

[2] Such potential claims are likely why Mr. Karch clarified that, although he "does not concede that [NOAA's] position is correct as a matter of law," he seeks to withdraw his bid rather than litigate the issue. (ECF No. 36 at 5–6.)

6

*Ticaret A.S.*, 10 F.3d 1015, 1018–24 (3d Cir. 1993); (ECF No. 34 at 4–5 ("All liens upon the Vessel adjudged valid and enforceable by the Court shall attach to the proceeds thereof in the same relative priorities which they enjoyed when they attached to the Vessel, and the Vessel shall thereupon be sold free and clear of all liens and encumbrances whatsoever."))[3]

In short, "[t]he consequences of the judicial sale itself are to extinguish any previous rights in the vessel and to deliver title to the purchaser free and clear of any encumbrances as a matter of law," so "[Plaintiff's] claim to ownership [is] free and clear of any encumbrances." *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 377 F. App'x 150, 153 (3d Cir. 2010); *see id.* ("[T]he 'dominion of the suit in admiralty over the vessel or thing itself . . . gives to the title made under its decrees validity against all the world.'" (omission in original) (quoting *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427 (1866))).

Accordingly, for the foregoing reasons and other good cause shown, **IT IS** on this ⟨ 22nd ⟩ day of July, 2026, **ORDERED** and **DECREED** that:

1. The Court **SUSTAINS** Mr. Karch's objection, (ECF No. 36), and **GRANTS** Plaintiff's Motion for Confirmation of the Sale of Defendant Vessels, (ECF No. 37);

2. Mr. Karch is **HEREBY** released from his bid and any further obligation under the terms of sale, and the U.S. Marshal is **HEREBY** directed to return Mr. Karch's deposit of Ten Thousand Dollars ($10,000.00);

3. The sale of Defendant Vessels and Permits to Plaintiff is **HEREBY** confirmed as follows:

---

[3] Nothing before the Court suggests the NOAA has imposed permit sanctions against Defendants. *See* 16 U.S.C. § 1858(g)(3) (explaining that permit sanctions, unlike other penalties or sanctions imposed under Section 1858, "shall not extinguish" upon transfer of ownership of a vessel); *Key Bank of Wash. v. Concepcion*, 847 F. Supp. 844, 847 & n.2 (W.D. Wash. 1994).

7

a. The sale of the F/V *CAROL ANN* (O.N. 615907), her engines, gear, tackles, apparel, furniture, fishing and salting equipment, etc., to Plaintiff Farm Credit East, ACA, for the sum of $25,000, is **HEREBY** confirmed, and the U.S. Marshal is **HEREBY** directed to issue and execute a bill of sale for the F/V *CAROL ANN* (O.N. 615907), her engines, boilers, tackle, electronics, and all appurtenances, including its federal fishing permits and quota (No. 330396), etc., to Farm Credit free and clear of any liens or encumbrances whatsoever;

b. The sale of the F/V *MAJOR EXPENSE* (O.N. 627357), her engines, boilers, tackle, electronics, and all appurtenances, including its federal fishing permits and quota (No. 330566) etc., to Farm Credit, for the sum of $5,000 is **HEREBY** confirmed, and the U.S. Marshal is **HEREBY** directed to issue and execute a bill of sale for the F/V *MAJOR EXPENSE* (O.N. 627357), her engines, boilers, tackle, electronics, and all appurtenances, including its federal fishing permits and quota (No. 330566), etc., to Farm Credit free and clear of any liens or encumbrances whatsoever;

c. The sale of the F/V *MARKET PRICE* (O.N. 1275363), her engines, boilers, tackle, electronics, and all appurtenances, including its federal fishing permit and quota (No. 251849) etc., to Farm Credit, for the sum of $430,000 is **HEREBY** confirmed, and the U.S. Marshal is **HEREBY** directed to issue and execute a bill of sale for the F/V *MARKET PRICE* (O.N. 1275363), her engines, boilers, tackle, electronics, and all appurtenances, including its federal fishing permit and quota (No. 251849) etc. to Farm Credit free and clear of any liens or encumbrances whatsoever;

8

4. In light of Plaintiff Farm Credit's default judgment amount of $2,588,032.20, plus its *in custodia legis* expenses, Plaintiff shall not have to pay into the Registry of the Court any further sums;[4]

5. Farm Credit East has paid to the U.S. Marshal all sums as may be due to the U.S. Marshal pursuant to 28 U.S.C. § 1921 and the costs associated with preparing a bill of sale;

6. The U.S. Marshal should refund to Plaintiff any unused funds as a deposit pursuant to LAMR (e)(9); and

7. The Clerk of the Court shall **CLOSE** this case.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

---

[4] Pursuant to the terms of the Order of Sale, Plaintiff was entitled to bid at the Marshal's sale "an amount up to and including the amount of its Judgment, plus all *in custodia legis* expenses incurred by Farm Credit to the date of the sale, and to purchase [the Defendant Vessels and Permits], without having to pay money to either the United States Marshal or this Court." (ECF No. 34 at 4.) The Judgment, which totals $2,588,032.20, (ECF No. 32 at 6), exceeds the amount of Plaintiff's bid, and therefore Plaintiff is not required to pay any funds into the registry of this Court.

9